## 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

### FARINHOLT V. LUCKHARD.*

#### FEBRUARY 23d, 1886.

CONSTITUTION—*Construction—Laboring man.*—Clause 2, section 1, article XI, of the constitution of Virginia declares that the homestead exemption of a debtor shall not extend to any execution, order, or other process issued on any demand for services rendered by a laboring person or a mechanic: *held,* a mail carrier is a laboring person in the sense of the constitution.

Appeal from decree of circuit court of ———— county, rendered ————, 188–, in a chancery cause wherein D. A. Farinholt was complainant and Hardin A. Luckhard was defendant. The decree being adverse to the complainant, he appealed. Opinion states the case.

HINTON, J., delivered the opinion of the court.

The bill in this case alleges that the plaintiff, D. A. Farinholt, in August, 1875, entered into a contract with one Hardin A. Luckhard for the purpose of transporting the United States mail from West Point to Gloucester Courthouse. That by this contract Luckhard obligated himself to assign and transfer all orders and warrants that he should receive to the plaintiff. It charges that Luckhard, in violation of his contract, had assigned one of said warrants to H. R. Pollard to secure the sum of $65, but that there was a balance of $73 remaining in the hands of the assignee to which the plaintiff was entitled, and that Luckhard is indebted to the plaintiff in an amount much

---

* Ordered to be reported in 90 Va.

larger than the amount now in the hands of said Pollard.   It then charges that Luckhard is insolvent; and asks that the assignee, Pollard, may be enjoined and restrained from paying over and the said Luckhard may be enjoined from collecting the said balance until a common law suit, which then pending, for the recovery of damages under said contract, could be determined. The injunction was awarded, but on the hearing of the cause, the court " deciding that the claim of homestead asserted in the answer (of the defendant Luckhard) embraces the $73," dissolved the injunction and dismissed the bill.

The plaintiff assets that he is a "laboring man" within the meaning of these words as used in article XI, § 1, of the constitution of Virginia, and insists that Luckhard's claim to this balance, as a part of his homestead exemption, cannot be sustained as against the claim of the plaintiff thereto, "for services rendered as a laboring person"; and this is the single question to be determined, and it depends upon the construction which must be given to the phrase "laboring man."

Bouvier defines "laborer" as "a servant in husbandry or manufacture, not living *intra mœnia*," and no doubt this was the original technical meaning of the word.   It was usually applied to those employed in toilsome out-door work as distinguished from domestic servants.   But this was not the exact sense in which the words "laboring person" are used in the constitution. " A constitution," says Allen, J., in a noted case, " is an instrument of government, made and adopted by the people for practical purposes connected with the common business and wants of human life.   For this reason pre-eminently, every word in it should be expounded in its plain, obvious, common sense."   *The People* v. *Cent. R. R. Co.*, 24 N. Y., 486; *Gibbons* v. *Ogden*, 9 Wheat, 188.   This rule has a direct application to this case.   It would be difficult, if not impracticable, to give any general definition of the words "laboring man" which would at once include all the cases falling within the words and exclude those falling without.   And I shall not attempt to

do so. But we think it safe to say that the word "laborer," when used in its ordinary and usual acceptation, carries with it the idea of actual physical and manual exertion or toil, and is used to denote that class of persons who literally earn their bread by the sweat of their brows, and who perform with their own hands, at the cost of considerable physical labor, the contracts made with their employers. It is in this sense that the words "laboring man" were used in the constitution. The framers of that instrument, in giving to a large class of people a homestead exemption, clearly designed that it should not affect that class of persons who were dependent upon their own manual labor for the support of themselves and their families, and whose necessity for the prompt and certain payment of their wages they regarded as paramount even to the claims of the debtor to a homestead.

Assuming then that the words "laboring man" were used in the sense indicated above, it seems to us clear that the plaintiff must be regarded as a laboring man within the meaning of these words as used in the clause of the constitution under review. This case is analogous to the drayman who hauls the goods of the merchant along the streets of the city, perhaps with his own wagon and horses, or to the ploughman who habitually, and perhaps with his own team, is accustomed to break up the lands of his wealthy neighbors. The mail carrier in this case is clearly a laboring man. Few employments could be more arduous than the one in which he was engaged, and the mere circumstance that he happened to own the horse and vehicle used by him in carrying the mail, cannot deprive him of the character of laborer.

I am, therefore, of opinion that the circuit court of King William county erred in dissolving the injunction and dismissing the bill; its decree must therefore be reversed and the injunction must be reinstated to await the determination of the action at law.

DECREE REVERSED.